# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ERIC WATKINS,<br><br>　　　　　Defendant. | Case No. 14-cr-3661-BAS<br>　　　　　16-cv-3139-BAS<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255 (ECF No. 151);**<br><br>**(2) DENYING SUPPLEMENTAL MOTION TO VACATE (ECF No. 171);**<br><br>**(3) GRANTING IN PART AND DENYING IN PART FIRST AMENDED MOTION TO VACATE (ECF No. 162);**<br><br>**(4) VACATING THE ORIGINAL JUDGMENT (ECF No. 148) AND REENTERING THIS JUDGMENT TO ALLOW DEFENDANT THE RIGHT TO APPEAL;**<br><br>**(5) VACATING STATUS HEARING; AND**<br><br>**(6) DENYING AS MOOT MOTION FOR JOINDER AND MOTION TO SUBMIT CASE (ECF Nos. 180, 185)** |

## I. BACKGROUND

### A. STATEMENT OF FACTS

Defendant Watkins was charged with both conspiracy to recruit minor females to engage in prostitution in violation of 18 U.S.C. § 1594(c), as well as the substantive counts of sex trafficking children in violation of 18 U.S.C. § 1591(a) and (b). On March 1, 2016, Watkins pled guilty to the conspiracy count. In exchange, the Government agreed to drop the two substantive counts under which Watkins would have faced a fifteen-year mandatory minimum sentence. (ECF Nos. 94, 95, 96, 98.)

As part of his guilty plea, Watkins admitted that he and co-conspirator Bojorquez detained a 15 year old against her will for two days, told her she was going to work as a prostitute for them, posted on-line advertisements including photographs of her and another 15 year old, and rented a hotel room so the two minors could conduct commercial sex acts. (Plea Agreement § II.B ¶¶ 1-4, 6, ECF No. 95.) Watkins further admitted that when he and Bojorquez took the 15 year old to Angelo's Burgers and told her to "make money for them or there would be consequences," she began to cry and fled to a nearby bar, where she told the staff she had been kidnapped. (*Id.* ¶ 7.) She was then allowed to call her father who brought her home and called the police. (*Id.*)

In the Plea Agreement, the parties agreed that the Government would seek a base offense level of 29 (starting at 30, with +2 for use of a computer, and -3 for acceptance of responsibility), and Defense Counsel was free to argue the base offense level should be 23 (starting at 24, with +2 for use of a computer, and -3 for acceptance of responsibility). (Plea Agreement § XA.) The parties further agreed that the ultimate decision as to the guideline range and final sentence would be in the sole discretion of the sentencing judge and that the judge's failure to follow the Plea Agreement would not give Watkins the right to withdraw his plea. (*Id.* § IX.)

"In exchange for the Government's concessions in th[e] plea agreement," Watkins agreed to waive, "to the full extent of the law, any right to appeal or to

collaterally attack the conviction . . . except a post-conviction collateral attack based on a claim of ineffective assistance of counsel." (Plea Agreement § XI.) Watkins further agreed to waive "any right to appeal or collaterally attack his sentence" as long as the Court did not impose a custodial sentence above the high end of the guideline range recommended by the Government. (*Id.*; ECF No. 157, Ex. A at 9:17-10:2).

After his guilty plea and before sentencing, Watkins dismissed the Federal Defender who had been representing him, Mr. Johnson, and substituted in retained counsel, Mr. Baum. (ECF No. 133.) On September 20, 2016, at sentencing, the Court did not impose a custodial sentence above the high end of the guideline range recommended by the Government, and thus confirmed with Mr. Watkins and his attorney that Watkins had given up his right to appeal both the conviction and the sentence as part of his Plea Agreement. (ECF No. 157, Ex. B at 27:10-14.) Both counsel and Watkins confirmed this waiver. (*Id.*)

### B. Procedural History

On November 22, 2016, Watkins wrote a letter to the Court complaining that his attorney had been ineffectual, which the Court construed as a Motion to Vacate pursuant to 28 U.S.C. § 2255. (ECF Nos. 150, 151.) In the letter, Watkins claimed that his attorney "coerced me into signing a shammed plea agreement." (ECF No. 150.) Furthermore, Watkins argued that his attorney: (1) failed to present exculpatory evidence; (2) did not investigate witnesses who would have made statements on his behalf; and (3) misinformed him about the amount of time to which he was exposing himself. (*Id.*) The Government filed a response to these allegations. (ECF No. 157.) Watkins raised no issue regarding a failure to appeal.

After this Motion to Vacate was fully briefed, on September 29, 2017 (over a year after he was sentenced), Watkins moved for leave to file an amended motion. (ECF No. 160.) In this amended motion, Watkins raised very different claims of

ineffective assistance of counsel, arguing that his sentence was unconstitutional and that his attorney was ineffective for failing to file a notice of appeal of the sentence, which would have led to his successful claim that the Court's guideline range determination was in error. (*Id.*) The Government responded and requested that the Court hold an evidentiary hearing at which Mr. Watkins' attorney could be questioned about his decision not to file a notice of appeal. (ECF Nos. 163, 164.) The Court granted this request. (ECF No. 166.)

Just before the evidentiary hearing, Watkins filed a Supplemental Motion to Vacate pursuant to 28 U.S.C. § 2255. (ECF No. 171.) This Supplemental Motion largely repeated the allegations in the Amended Motion (ECF No. 160)—that Watkins' sentence was unconstitutional and that Mr. Baum's assistance was ineffective, but also argued that the Government had breached the Plea Agreement because it had argued for an "illegal" sentence. (*Id.*) In this Supplemental Motion, Watkins also requested appointment of counsel. (*Id.*)

The Court denied the request for appointment of counsel in light of the fact that Watkins was able to retain an attorney for his original case and had made no showing that he was indigent or unable to retain a lawyer to represent him at the evidentiary hearing. (ECF No. 181.)

At the evidentiary hearing at which Watkins represented himself pro per, Mr. Baum testified that he had never discussed filing an appeal with his client because his client had waived his right to appeal. He specifically denied being instructed by his client to file a notice of appeal. (ECF No. 181.) This testimony was contradicted by both Watkins and his father who testified that they had told Mr. Baum to file a notice of appeal but he refused. (*Id.*)

After the evidentiary hearing, the Court reconsidered its order denying counsel for Watkins. (ECF No. 176.) In light of *United States v. Duarte-Higereda*, 68 F.3d 369 (9th Cir. 1995), the Court appointed Mark Adams to represent Watkins subject to Watkins filing a Financial Affidavit establishing that he is, in fact, indigent and

unable to afford counsel. (*Id.*) The Court then reset the evidentiary hearing to give Mr. Adams an opportunity to revisit the issue of a notice of appeal. (*Id.*)

The Government then notified the Court that, in order to avoid a second evidentiary hearing, it was prepared to stipulate that *United States v. Sandoval-Lopez*, 409 F.3d 1193 (9th Cir. 2000), had been violated. The Government argues that the proper remedy for this violation is simply to reinstate the judgment to allow Watkins to file his notice of appeal. The Government continues to oppose Watkins' Motion to the extent he seeks to vacate his conviction or sentence on any other grounds. (*Id.*) Mr. Adams argues that the sentence should be vacated and that Watkins should be resentenced in light of *United States v. Wei Lin*, 841 F.3d 823 (9th Cir. 2016).

### III. ANALYSIS

#### A. Legal Standard

"[A] defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was ineffective." *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985)). Even in a claim of ineffective assistance of counsel for a guilty plea, Watkins must meet the *Strickland* test; that is, he must show, first, "that counsel's assistance was not within the range of competence demanded of counsel in criminal cases" and, second, that he suffered actual prejudice as a result of this incompetence. *Lambert*, 393 F.3d at 979-80; *Hill*, 474 U.S. at 57-58.

"A deficient performance is one in which counsel made errors so serious that []he was not functioning as the counsel guaranteed by the Sixth Amendment." *Iaea v. Sunn*, 800 F.2d 861, 864 (9th Cir. 1986) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of

reasonable representation." *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1987). The Court should not view counsel's actions through "the distorting lens of hindsight." *Hendricks v. Calderon,* 70 F.3d 1032, 1036 (9th Cir. 1995) (quoting *Deutscher v. Whitley,* 884 F.2d 1152, 1159 (9th Cir. 1989)), *vacated on other grounds Angelone v. Deutscher*, 500 U.S. 901 (1991).

In order to satisfy the second "prejudice" prong in a guilty plea case, "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. If the claim is a failure to investigate, prejudice turns on "the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea," which in turns leads to an inquiry of "whether the evidence likely would have changed the outcome of the trial." *Id.*

### B. Initial Motion to Vacate

In his initial Motion to Vacate (ECF No. 151), Watkins argues that his attorney was ineffective because he "coerced me into signing a shammed plea agreement," failed to present exculpatory evidence, did not investigate witnesses who would have made statements on his behalf, and misinformed him about the amount of time to which he was exposing himself. Although Watkins requested an evidentiary hearing on these issues, as discussed below, the Court finds that the allegations are so vague and conclusory, or are belied by the record, that an evidentiary hearing is not necessary. *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).

#### 1. Attorney Coercion

With respect to the first claim, there are no allegations about how Watkins' attorney—who he claims was retained counsel Mr. Baum, but who at the time he pled guilty was actually Federal Defender Mr. Johnson—allegedly coerced him into signing the Plea Agreement. And a review of both the signed Plea Agreement and

the plea colloquy belies this claim. Watkins initialed every page and signed the final page of the Plea Agreement. (Plea Agreement, ECF No. 95.) In that signed and initialed Plea Agreement, Watkins represented that no one had threatened him or his family to get him to enter into the Plea Agreement, no one had made promises to him other than those in the Plea Agreement, Watkins "had a full opportunity to discuss all the facts and circumstances of this case with defense counsel," and Watkins was "pleading guilty because in truth and in fact [he] is guilty and for no other reason." (*Id.* § VI.) Watkins further certified that he had read the Plea Agreement (or it had been read to him), and he understood its meaning in its entirety. (*Id.* § XV.) Finally, in the written Plea Agreement, Watkins certified that he "is satisfied with counsel's representation" and "his counsel did not advise him what to say in this regard." (*Id.* § XVI.)

Similarly at the plea colloquy, Watkins told the Court he had gone over all of the terms in the written Plea Agreement, was satisfied with his attorney, and had no questions for the Court about his Plea Agreement. (ECF No. 55 at 8-9.) Given the dearth of information about this allegation of coercion and the fact that it is clearly contradicted by the record, Watkins has failed to make even a threshold showing that his attorney's performance was deficient because of coercion.

### 2. Failure to Investigate or Present Exculpatory Evidence

With respect to the claim that his attorney failed to present exculpatory evidence and failed to investigate witnesses who would have made statements on Watkins' behalf, it is not clear if Watkins is referring to either: (a) evidence and witnesses who might have testified if he had gone to trial, or (b) evidence and witnesses at his sentencing hearing. Since he refers to Mr. Baum, and Mr. Baum was only his attorney for sentencing, the Court looks first to the evidence and witnesses at the sentencing hearing.

Mr. Baum not only filed Objections to the Presentencing Report (ECF No. 135) and a Sentencing Summary Chart (ECF No. 137), but he also filed a Sentencing Memorandum with various supporting exhibits and documents (ECF No. 147) and Supplemental Letters and Exhibits (ECF No. 142), including a letter from Watkins and certificates showing he had completed various self-improvement courses while in custody (ECF No. 142). Clearly, Mr. Baum presented statements and exhibits on Watkins' behalf at the sentencing hearing. Given the fact that this was a hearing for sentencing after a guilty plea, presentation of exculpatory evidence would not have been appropriate, but Mr. Baum presented evidence supporting his claim that Watkins was entitled to a reduced sentence. Watkins fails to show that this representation "was not within the range of competence demanded of counsel in criminal cases." *See Lambert*, 393 F.3d at 979-80.

To the extent Watkins is referring to the Federal Defender who represented him at the time he pled guilty, Watkins fails to point to what exculpatory evidence or witnesses Mr. Johnson failed to investigate. Therefore, he makes an inadequate showing of deficient performance.

Furthermore, Watkins fails to present sufficient evidence that but for these alleged deficiencies he would have insisted on going to trial. Watkins' original charges exposed him to a fifteen-year mandatory minimum. His counsel managed to strike a plea agreement with the Government that reduced this exposure. It limited the Government to recommending a sentence of no more than 135 months. The Court eventually sentenced Watkins to 120 months, well below the fifteen years he had been facing if he had gone to trial. (ECF No. 148.) Watkins does not claim that he would have gone to trial if his attorney had investigated this amorphous exculpatory evidence. Hence, he fails to meet the second prong as well.

– 8 –

14cr3661

### 3.     Misinformation About Amount of Time He Was Facing

Finally, Watkins claims his attorney misinformed him about the amount of time he was facing. Again, this claim is completely belied by the record.

In the written Plea Agreement, initialed and signed by Watkins, he acknowledged that he was facing a maximum term of life in prison. (Plea Agreement § IIIA.) Watkins further initialed that he understood "the [Sentencing] Guidelines are only advisory, not mandatory, and that the Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum" possible sentence that Watkins had acknowledged was life in custody. (*Id.* § VIII.)

Watkins also recognized in the Plea Agreement that "the sentence is within the sole discretion of the sentencing judge . . . Defendant understands that the sentencing judge may impose the maximum sentence provided by statute, and is also aware that any estimate of the probable sentence by defense counsel is a prediction, not a promise, and is not binding on the Court." (Plea Agreement § IX.) Furthermore, "it is uncertain at this time what Defendant's sentence will be," and "if the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant nevertheless has no right to withdraw the plea." (*Id.*)

This was reinforced during the plea colloquy, when Watkins was informed orally that the maximum penalty was life in custody; that the guidelines were advisory, not mandatory; and that the sentencing judge was not bound by the sentencing guidelines but could vary up to the maximum of life in custody. (ECF No. 155 at 6-7.) Thus, Watkins was clearly informed that he was facing a potential sentence of life in custody.

But, more specifically, the United States agreed in the Plea Agreement that it would recommend a base offense level of 29 (resulting in a guideline range of 108-135 months), and Watkins' attorney would recommend a base offense level of 23 (resulting in a guideline range of 57-71 months), but it would be up to the judge to

decide the appropriate sentence. (Plea Agreement § X). Thus, Watkins knew the Government would be arguing for a sentence of up to 135 months. He was not misinformed about the sentence he was facing.

Furthermore, Watkins' statement that "if Baun[1] had provided me with the correct information about the amount of time I was exposing myself to . . . I may have just went to trial" (ECF No. 151) is an insufficient showing of prejudice.

Because Watkins has failed to show either that his attorney's performance was deficient or that he suffered prejudice as result of any alleged deficiency, the Court **DENIES** Watkins' original Motion to Vacate (ECF No. 151).

### C. Amended Motion to Vacate

In his Amended Motion to Vacate (ECF No. 160), Watkins argues first that *United States v. Wei Lin*, 841 F.3d 823 (9th Cir. 2016)—which was decided after he was sentenced—shows that the Court erroneously determined Watkins' base offense level. However, in his Plea Agreement, Watkins agreed to waive any right to appeal *or collaterally attack* his sentence so long as the Court did not impose a custodial sentence above the high end of the guideline range recommended by the Government. (Plea Agreement § XI.)

In the Plea Agreement, the Government agreed it would recommend a base offense level no higher than 29. Since Watkins' criminal history category was III, the Government agreed as part of the Plea Agreement that it would recommend a sentence no higher than 135 months in custody. In fact, the Government recommended a sentence of 120 months in custody (ECF No. 139), and the Court followed this recommendation. (ECF No. 148.) Since the Court did not impose a custodial sentence above the high end of the guideline range recommended by the Government, Watkins has waived his right to collaterally attack this sentence. *See*

---

[1] Presumably Watkins is referring to Mr. Baum, even though he was not Watkins' attorney at the time Watkins entered his guilty plea.

*United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir. 1991) ("[A]n express waiver of the right to appeal in a negotiated plea of guilty is valid if knowingly and voluntarily made.")

However, Watkins also argues that his retained attorney was ineffective because he failed to file a notice of appeal despite Watkins' request that he do so. Watkins did not waive his right to collaterally attack the conviction or sentence based on ineffective assistance of counsel.

In *United States v. Sandoval-Lopez*, 409 F.3d 1193 (9th Cir. 2000), the Ninth Circuit held that an attorney's refusal to comply with a defendant's specific instruction to file an appeal constitutes ineffective assistance of counsel. This is true even if the defendant clearly waived his right to appeal as part of the plea agreement. *Id.*; *see also Roe v. Flores-Ortega*, 528 U.S. 470, 471 (2000) ("This is so because a defendant who instructs counsel to initiate an appeal reasonably relied upon counsel to file the necessary notice.").

If a defendant files a habeas petition alleging that this rule has been violated, and the Government does not object, "the district court can vacate and reenter the judgment without a hearing to allow the appeal to proceed, assuming without deciding that the petitioner's claim is true." *Sandoval-Lopez*, 409 F.3d at 1198. It is this remedy that the Government acquiesces to in this case.

Thus, the Court assumes, without deciding, that Watkins' claim is true to the extent he claims that *Sandoval-Lopez* was violated in this case. Therefore, the Court agrees to vacate and reenter the judgment without a further hearing to allow the appeal to proceed.

### D. Supplemental Motion to Vacate

In his Supplemental Motion to Vacate (ECF No. 171), Watkins adds an argument that the Government breached the Plea Agreement because it argued for an "illegal" base offense level. Again citing *United States v. Wei Lin*, 841 F.3d 823 (9th

Cir. 2016)—which was decided after Watkins was sentenced—Watkins argues that this case demonstrates that the Government's recommendation was "illegal" and, therefore, should be vacated.

As discussed above, Watkins waived his right to make this argument as part of his Plea Agreement. The Government reached its Plea Agreement with Watkins and made the arguments at sentencing based on the law in effect at the time. *Wei Lin* had not yet been decided. Therefore, the Government argued the Court could impose a base offense level based on the substantive counts that formed the basis for the conspiracy.[2] Watkins pled guilty knowing what he was facing and accepting that possibility. He received the benefit of his Plea Agreement bargain. He has failed to demonstrate that the Government breached its Plea Agreement.

### III. CONCLUSION

In light of the foregoing:

1. Watkins' Motion to Vacate (ECF No. 151) and Supplemental Motion to Vacate (ECF No. 171) pursuant to 28 U.S.C. § 2255 are **DENIED**.

2. Watkins' First Amended Motion to Vacate under § 2255 (ECF No. 162) is **GRANTED IN PART and DENIED IN PART**.

3. The Court **VACATES** the original judgment (ECF No. 148) and **REENTERS** this judgment without a further hearing to allow Watkins' appeal to proceed.

---

[2] In hindsight, the Ninth Circuit has now determined that this base offense level was incorrect. However, continuing this argument to its logical conclusion shows the danger of looking at circumstances in hindsight. If *Wei Lin* had been in effect at the time the Government entered into a plea agreement with Watkins, the Government might not have agreed to dismiss the 15-year mandatory minimum count, believing that the reduced sentence would have been insufficient. A look at the factual basis admitted by Watkins in his Plea Agreement demonstrates that there was a sufficient factual basis for the Government to proceed to trial on the 15-year mandatory minimum substantive counts. Looking through the distorted lens of hindsight is impossible and improper.

4. The Motion for Joinder (ECF No. 180) and Motion to Submit Case for Final Decision (ECF No. 185) are both **DENIED** as moot.

5. The status hearing set for June 25, 2018, is **VACATED**.

**IT IS SO ORDERED.**

DATED: June 22, 2018

Hon. Cynthia Bashant
United States District Judge